**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| PRISCILLA SEDA-RODRÍGUEZ FOR HERSELF AND IN REPRESENTATION OF HER SON I.M.S. | CIVIL NO.: 23-01207 |
| Plaintiff | **JURY TRIAL REQUESTED** |
| v. | |
| CENTRO MÉDICO EPISCOPAL SAN LUCAS PONCE, INC. D/B/A HOSPITAL SAN LUCAS PONCE; SOUTHERN OBSTETRICS & GYNECOLOGIC CENTER, P.S.C.; DR. ROBERTO BURGOS RODRÍGUEZ, HIS WIFE MAXY ROE, AND THE LEGAL CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN DR. BURGOS-RODRÍGUEZ AND HIS WIFE; DR. JANE ROE; MAX ROE; JANE DOE; UNKOWN COPORATIONS X, Y & Z; UNKOWN INSURANCE COMPANIES A, B & C. | |
| Defendants | |

**<u>COMPLAINT</u>**

**TO THE HONORABLE COURT:**

Plaintiff, Priscilla Seda-Rodríguez, in her personal capacity and in representation of her son I.M.S, through the undersigned attorneys, respectfully states and prays as follows:

## I.    INTRODUCTION

1. Obstetrical violence as well as medical and hospital malpractice are the genesis of this birth-injury, diversity-tort suit.

2.  A myriad of negligent acts and omissions by those in charge of Priscilla's labor and delivery process at codefendant Hospital San Lucas Ponce, Inc. (**"SLP Inc."**) caused I.M.S. to suffer an anoxic brain injury, cerebral palsy, microcephaly, and many other physical and neurological damages that are permanent and irreversible.

3.  Those injuries and damages have forever changed both I.M.S. and Priscilla's life, and, as a result, they have faced and will continue to face hardships of the worse imaginable kind. This Complaint is a concise summary of their story.

## II.    JURISDICTION AND VENUE

4.  This Honorable Court has jurisdiction to entertain this case pursuant to 28 U.S.C. § 1332, as there is complete diversity between Priscilla and codefendants.

5.  The relief requested in this case far exceeds the jurisdictional amount of $75,000, exclusive of interest and costs.

6.  Pursuant to 28 U.S.C. § 1391, venue is proper in this Honorable Court because the acts and omissions giving rise to the Complaint happened within this District.

## III.    THE PARTIES

7.  **Priscilla** gave birth to **I.M.S.** on December 20, 2020, after a very traumatic, two-day-long labor and delivery process. I.M.S. is Pricilla's only child.

8.  Priscilla and I.M.S. are domiciled and live in the State of Oklahoma.

2

9. Codefendant **SLP Inc.** is a corporate entity incorporated under the laws of Puerto Rico, doing business as a general hospital located in Ponce, Puerto Rico.

10. SLP Inc. provided inpatient services to Priscilla from December 18, 2020, to December 20, 2020.  It also provided inpatient services to I.M.S. after his birth.

11. SLP Inc. employed the nurses who provided nursing services to Priscilla at SLP. Inc.'s Labor and Delivery Ward from December 18, 2020, to December 20, 2020.

12. SLP Inc. also employed the nurses who provided nursing services to I.M.S. after his birth.

13. Likewise, SLP Inc. employed, subcontracted, and/or extended privileges to codefendant **Dr. Roberto Burgos-Rodríguez ("Dr. Burgos")**.

14. Dr. Burgos is the obstetrician/gynecologist who provided prenatal care as well as labor and delivery medical services to Pricilla from May 7, 2020, to December 20, 2020.

15. In December 2020, Dr. Burgos lived and worked in Puerto Rico.

16. When the facts alleged in this Complaint occurred, Dr. Burgos was married to Maxi Roe, a fictitious name given to a person whose identity is currently unknown.  Together with his wife, Dr. Burgos constituted a conjugal legal partnership that derived financial benefits from the services provided to Priscilla.

17. Dr. Burgos is the sole owner, sole shareholder, president, treasurer, and the ultimate decision-maker of codefendant **Southern Obstetrics & Gynecologic Center, P.S.C. ("SOGC")**.

3

18. SOGC is a professional service corporation incorporated under the laws of Puerto Rico to provide medical services in gynecology and obstetrics.

19. SOGC is comprised of a group of obstetric gynecologists, certified by the American Board of Obstetrics and Gynecology, who are prepared and able to tend to all of the healthcare needs of women in the Southern part of Puerto Rico.

20. Through Dr. Burgos, SOGC provided gynecology and obstetrical services to Priscilla from May 7, 2020, to December 20, 2020.

21. When the facts alleged in the Complaint took place, SLP Inc., Dr. Burgos, and SOGC were embroiled in a perfect solidarity relationship under which they jointly provided services to Priscilla and derived mutual benefits from it. Through the perfect solidarity relationship, SLP Inc., Dr. Burgos, and SOGC derived income from the healthcare services jointly provided to Priscilla.

22. Dr. Jane Roe, Max Roe, and Jane Doe are fictitious names given to codefendants whose identities and involvement in this case are currently unknown.

23. Corporations X, Y, and Z are the fictitious names given to the unknown entities that employed the employees, agents, administrators, owners, directors, or subcontractors who negligently provided the subpart medical treatment that caused the damages alleged in this Complaint.

24. Insurance Companies A, B, and C are the fictitious names given to the unknown insurance companies that provided insurance policies for the above

codefendants. Those insurance policies provide coverage for the damages claimed in this suit.

## IV.    THE FACTS

### A. Priscilla Becomes Dr. Burgos' Patient at SOGC, Where She Receives Gynecology and Obstetrical Services

25. On May 7, 2020, Priscilla becomes Dr. Burgos and SOGC's patient.

26. Priscilla is in her first pregnancy, and Dr. Burgos informs her that I.M.S. is coming along without any complications.

27. From May 7, 2020, to December 18, 2020, Priscilla visits Dr. Burgos at SOGC for prenatal care on no less than eleven occasions.

28. Priscilla's prenatal laboratory profile and prenatal ultrasounds at SOGC show no abnormal results.

29. On December 11, 2020, Priscilla goes to SOGC for a prenatal visit, and, after a pelvic exam, Dr. Burgos sends her home.

30. According to Dr. Burgos, I.M.S. is expected to be born on December 15, 2020, and he is to be a healthy baby.

### B. December 18, 2020: Priscilla Begins to Feel Uterine Contractions and Goes to SLP Inc.'s Emergency Room

31. On December 18, 2020, after 4:00 am, Priscilla begins to feel uterine contractions every three to four minutes.

32. By 6:00 am, Priscilla is already at SLP Inc.'s Emergency Room, where a pelvic exam shows five centimeters of dilatation.

33. At 8:17 am, SLP Inc.'s nurses place a fetal heart rate monitor on Priscilla, and its first tracing shows I.M.S.'s heart rate to be 134 beats per minute.

34. Around 9:00 am, Dr. Burgos is notified about Priscilla's presence at SLP Inc., and he orders that the patient be admitted into inpatient care.

35. Almost twelve hours later, at approximately 8:00 pm, Dr. Burgos personally examines Priscilla for the first time.

36. During the late hours of the night, Priscilla's uterine contractions begin to intensify in time and duration.

37. Priscilla begins to feel significant pain and discomfort, and the alarms of the fetal heart rate monitor begin to go off frequently. Priscilla begins to worry that I.M.S. may be in danger.

### C. DECEMBER 19, 2020: DR. BURGOS AND SLP INC.'S NURSES REPEATEDLY DENY PRISCILLA HER RIGHT TO HAVE A C-SECTION

38. On December 19, 2020, throughout the wee hours of the morning, Priscilla continues to struggle with uterine contractions and intense pain.

39. She begins voicing her concerns about I.M.S.'s well-being, but nothing changes at SLP Inc. On the contrary, Dr. Burgos and SLP Inc.'s nurses leave Priscilla alone in her room to fend for herself, and every second that goes by feels like an eternity to her.

40. The alarms of I.M.S.'s fetal heartrate monitor stubbornly refuse to yield, but SLP Inc.'s nurses ignore the deafening sounds.

6

41. Finally, at 11:00 am, Dr. Burgos comes to examine Priscilla, and another pelvic exam shows five centimeters of dilatation.

42. Approximately six hours later, Priscilla has ruptured membranes.

43. Seriously concerned with the possibility that I.M.S. could be in danger, Priscilla begins to demand that a C-section be performed. But no one takes Priscilla seriously, and she is forced against her will to continue the labor process.

44. Priscilla's pain and discomfort become intolerable, and she is given morphine.

45. By 11:40 pm, Priscilla has already become fully dilatated. She pushes and then pushes again but to no avail. Priscilla continues demanding a C-section, but no one listens.

46. SLP Inc.'s nurses document in the medical record that Priscilla is in despair and in a lot of pain. Even though SLP Inc.'s nurses know that Priscilla is being denied a C-section, they do nothing about it, and thus allow Priscilla to continue suffering.

47. Priscilla can no longer bear the pain.  She does not want to have a vaginal delivery. Priscilla implores Dr. Burgos to give her a C-section.  But Dr. Burgos refuses.

48. Rather, Dr. Burgos snaps at Priscilla and violently blurs out that she will have to do without his medical care if she continues to ask him for a C-section.

7

49. Priscilla is frightened and cannot stop the tears of pain, despair, and disbelief pouring down her face.

**D.** **D**ECEMBER **20, 2020**: **D**R. **B**URGOS AND **SLP I**NC.'S **N**URSES **F**ORCE **U**PON **P**RISCILLA AND **I.M.S.** A **T**RAUMATIC **V**AGINAL **D**ELIVERY BY **V**ACUUM **E**XTRACTION

50. On December 20, 2020, around 6:38 am, Dr. Burgos and SLP Inc.'s nurses continue to try forcing Priscilla to have a vaginal delivery against her will.  At that time, **over seven hours have gone by after full dilatation.**

51. In Priscilla's room at SLP Inc., Dr. Burgos begins trying to forcefully pull I.M.S. out of Priscilla's womb by hand, but he utterly fails.

52. Dr. Burgos finally decides to transfer Priscilla to SLP Inc.'s Delivery Room.

53. Without obtaining Priscilla's informed consent, Dr. Burgos begins attempting a vacuum extraction.

54. Dr. Burgos puts the vacuum on I.M.S.'s head for the first time around 6:44 am.

55. The machine, however, yanks lose from I.M.S.'s head due to the force with which Dr. Burgos is pulling.

56. The same happens again at 6:54 am, the second time Dr. Burgos forcefully pulls from I.M.S.'s head with the vacuum.

57. At 6:58 am, the vacuum yanks lose from I.M.S.'s head a third time; then, again, a fourth time, at 6:59 am.

58. At 7:08 am, Dr. Burgos applies the vacuum a fifth time. More suctioning and forceful pulling; at last, Dr. Burgos takes I.M.S. out.

**E. The Negligence of Dr. Burgos and SLP Inc.'s Nurses Cause Irreversible Injuries to I.M.S.**

59. Due to the unnecessarily long and traumatic labor and delivery process, I.M.S. is born hypotonic and cyanotic. He does not cry and is unresponsive.

60. For five consecutive minutes, SLP Inc.'s nurses give I.M.S. ventilation with a bag and mask.

61. When a pediatrician takes over at SLP Inc.'s Delivery Room, I.M.S. is limp, with poor respiratory effort, and still cyanotic.

62. A neonatologist eventually determines that I.M.S. is a candidate for SLP Inc.'s Hypothermia Protocol.

63. I.M.S.'s umbilical cord gases and blood gases show acidosis.

64. I.M.S. receives a diagnosis of ischemic encephalopathy.

65. SLP Inc.'s doctors transfer I.M.S. to the Neonatal Intensive Care Unit.

66. The admission diagnosis is mild hypoxic-ischemic encephalopathy.

67. The secondary diagnosis is hypoventilation syndrome, vacuum extraction, respiratory distress syndrome, respiratory insufficiency, chronic lung disease, and patent-foramen ovale and tricuspid regurgitation.

68. At the Neonatal Intensive Care Unit, I.M.S. requires body cooling as well as specialized services from neurology, cardiology, and many other subspecialties.

69. On January 27, 2021, SLP Inc. discharges I.M.S. home on supplemental oxygen.

### F. The Negligence of Dr. Burgos and SLP Inc.'s Nurses Forever Change Priscilla and I.M.S.'s Life

70. Looking to obtain medical services for I.M.S. unavailable in Puerto Rico, Priscilla permanently moves to the United States, where I.M.S. receives the following diagnoses: anoxic brain injury, cerebral palsy, microcephaly, Horne's Syndrome, delayed social and emotional development, optic atrophy, myopia of both eyes, and feeding difficulties, among others.

71. I.M.S.'s multiple conditions and needs make it impossible for Priscilla to work or do anything other than caring for him 24/7. Most likely, this will be Priscilla and I.M.S.'s dire reality for the rest of their life.

### G. Priscilla Tolls the Statute of Limitations as to Her Claims Against Codefendants

72. On December 7, 2021, through a judicial complaint filed in the Puerto Rico Court of First Instance, Priscilla tolls the statute of limitations as to her claims against all codefendants.

73. The statute of limitation as to those claims has yet to begin running again.

## V.    CAUSES OF ACTION

### A. First Cause of Action: Hospital and Medical Malpractice Under the Puerto Rico Civil Code

74. All the allegations stated above are incorporated and realleged below.

75. SLP Inc., its nursing and ancillary personnel, as well as Dr. Burgos and SOGC, provided negligent medical care to Priscilla, which caused the damages alleged in this Complaint.

76. Under the Puerto Rico Civil Code, applicable in this case pursuant to Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), all codefendants are jointly and severally liable for the negligent acts and omissions that caused the damages alleged in this Complaint.

77. Under Puerto Rico law, SLP Inc. is independently, primarily, separately, and fully liable for the damages negligently caused to both Priscilla and I.M.S. by Dr. Burgos and SLP Inc.'s nurses.

78. Had codefendants properly and timely delivered I.M.S. by following the applicable standard of care, the damages alleged in the Complaint would have never materialized.

79. Among other things, codefendants negligently ignored constant alarms from I.M.S.'s fetal heart rate monitor and other red flags which indicated that a C-section was medically indicated and necessary.

80. For well over eight hours, Dr. Burgos and SLP Inc.'s nurses ignored Priscilla's reiterated demand to have a C-section and thus forced her to endure a traumatic and very painful labor and delivery process, as well as a traumatic vaginal delivery by vacuum extraction, in violation of the applicable standard of care and best medical practices as well as of Priscilla's rights and wellbeing, which caused the damages alleged in the Complaint.

81. Also negligently, SLP Inc.'s nurses failed to activate the chain of command or otherwise act upon Dr. Burgos' reiterated refusals to comply with Priscilla's expressed will to have a C-section, and thus negligently violated the standard of

11

care and failed to assure that Priscilla's rights and wellbeing be respected and safeguard.

82. Worse yet, not only did Dr. Burgos and SLP Inc.'s nurses depart from the applicable standard of care by denying Priscilla a C-section, but they also negligently violated the applicable standard of care by failing to obtain an informed consent from Priscilla to perform a vacuum extraction.

83. Further, Dr. Burgos and SLP Inc.'s nurses negligently departed from the standard of care by failing to request the services of a pediatrician and a neonatologist in the Delivery Room to receive I.M.S. and care for him upon his birth. As a result, SLP Inc.'s nurses had to provide resuscitation to I.M.S.

84. Codefendants' negligence caused Priscilla and I.M.S. to endure an excessively long, painful, and traumatic labor and delivery process.

85. Codefendants' negligence has caused I.M.S. a plethora of physical and neurological conditions that are permanent and irreversible.

86. They have also caused Priscilla the worse imaginable kind of emotional distress—that of a mother who witnesses her only child struggle every second of every minute with the most basic things in life.

87. Codefendants are jointly and severally liable for those damages and all others alleged in this Complaint.

88. Under the Puerto Rico Civil Code, SLP Inc., Dr. Burgos, SOGC, and Corporations X, Y, and Z are jointly, severally, and vicariously liable for the damages caused by the negligent acts and omissions alleged in this Complaint.

89. Punitive damages are also warranted against Dr. Burgos, SOGC, and SLP Inc. under the applicable provisions of the Puerto Rico Civil Code.

90. Under the insurance policies in effect when the negligent acts and omissions alleged in this case occurred, as per the Puerto Rico Direct Action Statute, codefendants' insurance carriers are directly and independently liable for the damages claimed in the Complaint.  These insurers will be identified during the discovery process of this case.

### B. Second Cause of Action: Hospital and Commercial Liability under the Puerto Rico Civil Code

91. All the allegations stated above are incorporated and realleged below.

92. SLP Inc., SOGC, and Corporations X, Y, and Z had the obligation to put in place rules, procedures, policies, and protocols to ensure the safety of all patients, including Priscilla and I.M.S.

93. SLP Inc., SOGC, and Corporations X, Y, and Z were dutybound to comply with Regulations issued by the Puerto Rico Department of Health. On information and belief, SLP Inc., SOGC, and Corporations X, Y, and Z negligently failed to comply with those Regulations.

94. On information and belief, SLP Inc., SOGC, and Corporations X, Y, and Z failed to put in place the required rules, procedures, policies, and protocols.

95. SLP Inc., SOGC, and Corporations X, Y, and Z failed to supervise their personnel to make sure that they would abide by the applicable standard of medical care and the required rules, procedures, policies, and protocols.

13

96. On information and belief, SLP Inc., SOGC, and Corporations X, Y, and Z failed to put in place the required rules, procedures, policies, and protocols.

97. SLP Inc., SOGC, and Corporations X, Y, and Z failed to properly train their personnel so that they would abide by the applicable standard of care and the required rules, procedures, policies, and protocols.

98. Among other things, SLP Inc., SOGC, and Corporations X, Y, and Z negligently failed to ensure that the doctors, nurses, and other personnel who interacted with Priscilla and I.M.S. had the expertise, knowledge, and training to provide proper medical care.

99. SLP Inc., SOGC, and Corporations X, Y, and Z negligently provided privileges to, and/or contracted with, healthcare providers, who, on information and belief, were not fit to provide proper medical care for Priscilla and I.M.S.

100. SLP Inc., SOGC, and Corporations X, Y and Z negligently understaffed SLP Inc. for financial gain.

101. Priscilla and I.M.S. received subpar and negligent medical services at SLP Inc. because SLP Inc., SOGC, and Corporations X, Y, and Z negligently failed to comply with their obligations and duties.

102. Under the Puerto Rico Civil Code, SLP Inc., SOGC, and Corporations X, Y, and Z are jointly and severally liable for the damages claimed in this case.

103. Under the insurance policies in effect when the acts and omissions alleged in this case occurred, as per the Puerto Rico Direct Action Statute,

codefendants' insurance carriers are liable for the damages claimed in the Complaint.

### C. THIRD CAUSE OF ACTION: PERSONAL LIABILITY UNDER PUERTO RICO CORPORATE LAW

104.     All the allegations stated above are incorporated and realleged below.

105.     Dr. Burgos is SOGC's owner, principal stakeholder, and ultimate decision maker.

106.     Under Puerto Rico Corporate Law, the owner of a professional service corporation such as SOGC is personally liable for the damages caused by the negligent actions and omissions of the professionals who provide services on the corporation's behalf.

107.     SOGC retained Dr. Burgos as well as other professionals whose negligent actions and omissions caused the damages alleged in this Complaint.

108.     As SOGC's owner and principal stakeholder, Dr. Burgos is personally liable for the negligent actions and omissions that caused the damages claimed in the Complaint.

109.     Under the insurance policies in effect when the acts and omissions alleged in this case occurred, as per the Puerto Rico Direct Action Statute, Dr. Burgos and SOGC's insurance carriers are liable for the damages claimed in the Complaint.

**D. Fourth Cause of Action: Direct Action Against the Unknown Insurance Companies A, B, & C**

110.   All the allegations stated above are incorporated and realleged below.

111.   The Puerto Rico Direct Action Statute allows tort victims to seek redress directly from an insurance company such as the currently Unknown Insurance Companies A, B & C.

112.   The direct action against the insurer is independent, but the damages sought "are based on the same factual situation and stem from the fault or negligence of the insured." <u>Fraticelli v. St. Paul Fire and Marine Insurance Co.</u>, 375 F.2d 186, 188. (1st Cir. 1967).

113.   Under the Puerto Rico Direct Action Statute, the Unknown Insurance Companies A, B & C are contractually responsible to redress the damages negligently caused by their insureds, as claimed in the Complaint.

## VI.   DAMAGES

**A. I.M.S.'s General Damages**

114.   All the allegations stated above are incorporated and realleged below.

115.   Due to codefendants' negligent acts and omissions, I.M.S. suffers physical and neurological injuries that are permanent and irreversible.

116.   Codefendants' negligent acts and omissions have caused and will forever cause I.M.S. to be a brain-damaged human being who suffers from the

16

following permanent conditions: anoxic brain injury, cerebral palsy, microcephaly, Horne's Syndrome, delayed social and emotional development, optic atrophy, myopia of both eyes, and feeding difficulties, among others.

117.    Codefendants' negligent acts and omissions have forever deprived I.M.S. from living and enjoying a normal life. He will forever be dependent on others to do basic things of everyday living.

118.    Codefendants' negligent acts and omissions have most likely caused I.M.S. to never be able to successfully attend school, attain an education or a career, work, form a family of his own, or even enjoy a normal daily routine, as he will never be able to fend or provide for himself.

119.    Despite the damages negligently caused by codefendants, I.M.S. is aware of his surroundings, feels pain, discomfort, cries, yells, and gets extremely frustrated and agitated (even at age two) when his many physical and neurological impairments limit his ability to function.

120.    Even though I.M.S.'s quality of life will forever be hindered by the damages negligently caused by codefendants, he is expected to have a normal life expectancy.

121.    Codefendants' negligent acts and omissions have not only caused severe physical and neurological injuries to I.M.S., but they have also sentenced him to a life plagued with physical and emotional suffering, pain, and despair of the worse imaginable kind.

### B. I.M.S.'s SPECIAL DAMAGES

122.    All the allegations stated above are incorporated and realleged below.

123.    As a result of the negligent acts and omissions of codefendants, for the rest of his life, I.M.S. will need specialized medical treatments and nursing care as well as specialized equipment, medications, and supplies.

124.    As a result of the negligent acts and omissions of codefendants, I.M.S. will forever be dependent on others for feeding, dressing, personal hygiene, and many of the other basic tasks of everyday life.

125.    I.M.S. will never be able to live alone or independently; he will always need 24/7 care and assistance at home and everywhere else.

126.    As a result of the negligent acts and omissions of codefendants, I.M.S. will require handicapped facilities, equipment, and supplies for daily living, which will have to change and be updated as he grows.

127.    Due to the injuries negligently caused by codefendants, I.M.S. will need life-long specialized consultations with pediatricians and general practitioners; neurologists; gastroenterologist; pneumologists; speech and physical therapists; occupational therapists; nutritionists, among many other healthcare professionals and services.

128.    Codefendants are liable for all past, present, and future expenses and costs associated with I.M.S.'s injuries, damages, and special needs because they arise from the injuries and damages negligently caused by them.

129.    Codefendants are also liable for all past, present, and future expenses and costs incurred by governmental agencies and healthcare providers in connection with medical services, equipment, therapies, medications, and supplies provided to I.M.S. to treat the physical and emotional injuries negligently caused to him, as alleged in this Complaint.

**C. Priscilla's General Damages**

130.    All the allegations stated above are incorporated and realleged below.

131.    As a result of the negligent acts and omissions of codefendants, Priscilla endured an unnecessarily long and painful labor and delivery process.

132.    At SLP Inc., Priscilla fell victim to obstetrical violence at the hands of Dr. Burgos and SLP Inc.'s nurses. Still today, that experience, as well as the resulting injuries and damages, deeply torments Priscilla and causes significant emotional distress to her.

133.    As a result of the negligent acts and omissions of codefendants, Priscilla has involuntarily become the mother of a brain-damaged child. Priscilla loves and cherishes her son I.M.S., but she struggles with frustration, sadness, anger, and deep emotional pain due to the many vicissitudes and hardships codefendants have negligently inflicted upon them.

134.    Priscilla knows that I.M.S. will never have a normal life, that he will always be dependent on others. This harsh reality causes Priscilla emotional pain, suffering, and distress.

135.    Priscilla is often consumed with fear, pain, and emotional distress over I.M.S.'s future; in particular, she is deeply anguished by the reality that I.M.S. will be unable to care for himself when she is unable to do so, for whatever reason, including her eventual passing.

136.    Codefendants' negligent actions and omissions have forever changed all aspects of Priscilla and her son's lives. Because she must be by I.M.S.'s side 24/7, Priscilla can no longer enjoy either a social or professional life.

137.    To procure specialized medical care unavailable or unattainable in Puerto Rico, Priscilla permanently moved to the United States, where she has struggled to survive and has faced and currently still faces innumerable challenges.

138.    The new living reality thrust upon this young mother's shoulders by the negligent actions and omissions of codefendants have caused and will forever cause deep emotional pain, suffering, and distress to Priscilla.

## VII.  JURY TRIAL REQUESTED

139.    Pursuant to Fed. R. Civ. P. 38(b), jury trial is respectfully requested as to all triable issues.

## VIII.  PRAYER FOR RELIEF

140.    The value of the general and special damages I.M.S and Priscilla have suffered and will forever suffer due to codefendants' negligence exceeds $30,000,000.

141.    Compensation in excess of that amount is warranted and requested.

142.    Additionally, punitive damages against codefendants under the Puerto Rico Civil Code are warranted and requested.

143.    In the event that codefendants deny their liability for the negligent acts and omissions giving rise to the claims set forth in this action as well as for the ensuing damages, the imposition of pre-judgment and post-judgment interest and attorney's fees at the maximum rate allowed by law will be warranted.

**WHEREFORE**, Plaintiff Priscilla Seda-Rodríguez demands judgment for herself and on behalf of her son I.M.S. against codefendants, jointly and severally for an amount in excess of $30,000,000, to be determined by a jury at trial, which will include special, compensatory, and punitive damages, costs, attorney's fees and all other applicable relief.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 28th day of April 2023.

**PRV LAW OFFICE**
Attorneys for Plaintiff
221 Plaza, Sixth Floor
Ponce de León Ave. 221
San Juan, P.R. 00917
www.prvlaw.com
c. 787-299-5118

s/Paúl A. Rodríguez Vélez
USDC-PR 300008
prodriguez@prvlaw.com

**LAW OFFICES DAVID EFRON, PC**
Attorneys for Plaintiff
PO Box 29314
San Juan, PR 00929-0314
Tel. 787-753-6455
Fax 787-758-5515

s/David Efron David Efron
USDC-PR 125701
efron@davidefronlaw.com