**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

PRISCILLA SEDA-RODRÍGUEZ, et al.,

     **Plaintiffs,**

    **v.**

CENTRO MÉDICO EPISCOPAL SAN
LUCAS PONCE, INC. d/b/a HOSPITAL
SAN LUCAS PONCE, et al.,

     **Defendants.**

**Civ. No. 23-1207 (ADC)**

<u>**OMNIBUS OPINION AND ORDER**</u>

## I.    Introduction

This case centers on allegations of medical malpractice concerning the birth of minor plaintiff "I.M.S." which took place between December 18 and 20, 2020. The procedure was performed by defendant Dr. Roberto Burgos-Rodríguez ("Dr. Burgos") in the Hospital San Lucas Ponce, a teaching hospital owned and operated by co-defendant Centro Médico Episcopal San Lucas Ponce, Inc. d/b/a Hospital San Lucas Ponce ("HESL"). Dr. Burgos, a faculty member at HESL, had treated I.M.S.'s mother and co-plaintiff, Priscilla Seda-Rodríguez ("Ms. Seda," and together with I.M.S., "plaintiffs"), prior to her delivery through his professional services corporation, co-defendant Southern Obstetrics & Gynecology Center, PSC ("SOCG" and together with HESL and Dr. Burgos, "defendants"). Plaintiffs allege that they suffered considerable damages as a result of the defendants' negligent actions and omissions during I.M.S.' birth.

Pending before the Court are three motions for summary judgment. The first motion was filed by HESL and asks the Court to enter partial summary judgment declaring that the liability caps provided for by Puerto Rico law to teaching hospitals and their medical faculty apply to plaintiffs' claims. **ECF No. 80**. Second, SOCG filed a motion for summary judgment seeking dismissal of all claims against it because Dr. Burgos was purportedly not acting on its behalf when the alleged tort was committed. **ECF No. 90**. Lastly, plaintiffs filed their own motion for partial summary judgment seeking a declaration that HESL and Dr. Burgos are not entitled to the protection of the statutory liability caps because they have not established that their actions were undertaken in the performance of their "teaching duties." **ECF No. 93**.

All parties have had an opportunity to respond, reply, and sur-reply to each others' arguments. The Court has reviewed all filings and taken into account the applicable law. For the reasons set forth below, the Court **DENIES** all three summary judgment motions.

## II.    Procedural Background

On April 28, 2023, plaintiffs filed the above-captioned complaint against defendants. **ECF No. 1**. On September 19, 2023, plaintiffs moved to amend the complaint, leave for which the Court granted. **ECF Nos. 28, 32**. In their amended complaint, filed at **ECF No. 33**, plaintiffs allege that SOCG, through Dr. Burgos, provided gynecology and obstetrics services to Ms. Seda from May 7, 2020 up to the date of I.M.S.'s birth on December 20, 2020. Plaintiffs further allege that the delivery was performed in HESL's facilities, and that Ms. Seda was attended by Dr. Burgos, resident physicians, and hospital nursing staff. It is alleged that Ms. Seda suffered complications

during her delivery which she attributes to SOCG and Dr. Burgos' negligence, as well as that of HESL's nursing and ancillary staff. These complications allegedly caused damages to I.M.S. in the form of multiple medical conditions, such as anoxic brain injury, cerebral palsy, microcephaly, Horne's Syndrome, delayed social and emotional development, optic atrophy, myopia of both eyes, and feeding difficulties, among others. Plaintiffs also allege that I.M.S. will not be able to live a normal life and will need specialized continuous care and assistance. Plaintiffs therefore seek $30,000,000 in general and special damages, plus the imposition of punitive damages, under Puerto Rico law.

All appearing defendants filed answers to the amended complaint denying liability. **ECF Nos. 35, 36, 41**. After several procedural developments and the conclusion of discovery[1], HESL was the first party to move for partial summary judgment and to submit a statement of uncontested material facts ("SUMF") on August 21, 2024. **ECF Nos. 80, 81**. Dr. Burgos filed a motion for joinder that same day. **ECF No. 85**. Also on that same day, SOCG filed its motion for summary judgment and SUMF, the first of which includes a request to join HESL's motion for partial summary judgment. **ECF Nos. 90, 91**. Plaintiffs sought an extension of time and filed their own motion for partial summary judgment on August 23, 2024. **ECF No. 93**.[2]

---

[1] Certain motions remain pending with the Court, some which relate to discovery matters. *See* **ECF Nos. 64, 66,** and **83**. Those will be addressed in due course by separate order.

[2] Plaintiffs elected not to comply with L. Civ. R. 56(b) and submit a separate SUMF. Instead, in a footnote to their motion, plaintiffs requested leave to incorporate the SUMF into the motion and proceeded to do so. *See* **ECF No. 93** at 3-4. The justification? That their SUMF is only six facts long. *Id.*, at 3 n.1. The Court finds it hard to comprehend why plaintiffs' attorneys would prefer to seek an exemption from a rule that applies to all litigants when the cost of

As to HESL's motion, plaintiffs filed an opposition on October 1, 2024, accompanied by a Counter-SUMF and several exhibits. **ECF No. 118**. After the Court resolved a brief dispute regarding plaintiffs' compliance with L. Civ. R. 7(e) (*see* **ECF Nos. 135, 150**), HESL filed a reply to plaintiffs' opposition and a Reply-SUMF on October 28, 2024. **ECF Nos. 155, 155-1**. On November 18, 2024, with leave of Court and after an extension of time, plaintiffs filed their sur-reply. **ECF No. 166**.

As to SOCG's motion, plaintiffs filed an opposition on October 4, 2024, also accompanied by a separately filed Counter-SUMF. **ECF Nos. 121, 122**. SOCG filed a reply on October 12, 2024 along with a Reply-SUMF. **ECF Nos. 138, 139**. On December 10, 2024, with leave of Court and after an extension of time, plaintiffs filed their sur-reply. **ECF No. 178**.

Finally, as to plaintiffs' motion, HESL filed an opposition on September 26, 2024 with an attached Counter-SUMF and several exhibits. **ECF No. 112**. SOCG and Dr. Burgos separately moved to join HESL's opposition. **ECF No. 113, 116**. On October 18, 2024, plaintiffs filed their reply to HESL's opposition. **ECF No. 146**. No defendant moved for leave to file a sur-reply.

---

compliance would have been minimal. At most, adhering to standard practice would have cost them an additional five minutes on the keyboard to copy and paste their SUMF to a separate document and file it either as a separate docket entry or as an attachment to the motion. It would have also given plaintiffs' attorneys peace of mind, judging from the fact that they have since filed not one, but two motions asking the Court to accept their incorporated SUMF and offering to re-file it as a separate document as an alternative. *See* **ECF Nos. 148, 179**. The Court has seriously considered denying plaintiffs' motion outright due to their purposeful violation of the Local Rules, but ultimately decides against it only because some of the materials attached to it and to HESL's opposition thereto are relevant to deciding HESL's motion for summary judgment. To put it simply, were it not for HESL's reliance on some of these documents in its reply in support of its own motion for partial summary judgment (**ECF No. 155**), plaintiffs' corner-cutting would have cost them their motion.

### III.    Legal Standard

Through summary judgment, courts "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992). A court may grant summary judgment only when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Sands v. Ridefilm Corp.*, 212 F.3d 657, 660 (1st Cir. 2000). A factual dispute is "genuine" if it could be resolved in favor of either party; it is "material" if it potentially affects the outcome of the case. *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 83 (1st Cir. 2016); *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). Although the court states the facts in the light most favorable to the party against whom summary judgment is sought, the court is still required "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Grp., Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001) (citation omitted).

The court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." *Reeves v. Anderson Plumbing Productions Inc.*, 530 U.S. 133, 135 (2000). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of a jury, not of a judge. *See id.*

It is a "bedrock principle that a party opposing summary judgment must adduce specific evidence sufficient to create a genuine issue of material fact." *Rodríguez v. Encompass Health Rehab. Hosp. of San Juan, Inc.*, 126 F.4th 773, 777 (1st Cir. 2025). Local Rule 56(c) states, in pertinent

part, that "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts" in which it "shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts."  L. Civ. R.  56(c). The opposing party may also include a "separate section [of] additional facts" which must comply with Local Rule 56(e). *Id.* Local Rule 56(e), for its part, provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. . . . The court shall have no independent duty to search or consider any part of the record not specifically referenced by the parties' separate statement of facts." L. Civ. R. 56(e). This is known as an "anti-ferret rule," which is "intended to protect the district court from perusing through the summary judgment record in search of disputed material facts and prevent litigants from shifting that burden onto the court." *López-Hernández v. Terumo Puerto Rico LLC*, 64 F.4th 22, 26 (1st Cir. 2023). Litigants ignore the anti-ferret rule at their peril. *Rodríguez-Severino v. UTC Aerospace Sys.*, 52 F.4th 448, 458 (1st Cir. 2022). In the end, the nonmoving party is required to demonstrate "through submissions of evidentiary quality that a trial worthy issue persists." *Iverson v. City of Boston*, 452 F.3d 94, 108 (1st Cir. 2006).

**IV.    Factual Findings**[3]

The Court draws the following factual findings from the parties' admissions on the record and those statements of proposed facts submitted by the parties that comply with L. Civ. R. 56. *See CMI Capital Market Inv. v. González-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). Although the Court reviewed every proposed fact properly submitted by the parties, it will only consider and include below those that are material and uncontested for purposes of summary judgment. Any proposed fact not included below is to have been deemed immaterial or contested.

Since June 9, 2008, the Regional Academic Medical Center for Southwest Puerto Rico, an independent nonprofit entity created pursuant to Act No. 136-2006, known as the "Regional Academic Medical Centers of Puerto Rico Act" ("RAMC Act"), has recognized HESL as a "Main Health Service Institution" affiliated with the Ponce School of Medicine.[4] **ECF No. 81** at ¶¶ 22-

---

[3] Part of the value that an experienced litigator brings to the table is the ability to fluently speak the language of the courts, *i.e.*, have a degree of expertise on how to effectively present a case. That is why the Court is baffled by some of the summary judgment tactics employed by plaintiffs' attorneys, David Efron and Paul Rodríguez-Vélez. For example, plaintiffs included proposed statements of fact along the lines of "X person stated the following in his deposition." *See, e.g.*, **ECF No. 93** at 4, ¶¶ 5-6; **ECF No. 118-1** at 2, ¶ 4. At one point, they follow that statement with a page-full of questions and answers from a deposition transcript excerpt. *See* **ECF No. 118-1** at 2, ¶ 4. The response to such a proposed fact, assuming the accuracy of the transcript is not subject to dispute, cannot be anything but an admission: "It is admitted that X persons said that during his deposition." *See* **ECF No. 155-1** at 8, ¶ 4 [". . . it is admitted only that the cited text is what [Ms.] Seda testified at the referenced pages. . ."). But what is the Court to do with this so-called fact? The contents of the deposition excerpts are not being proposed as facts themselves—the only fact being proposed is that the deponent declared thusly. If accepted, such a fact will rarely be a material one relevant for summary judgment purposes. If plaintiffs' attorneys wanted the Court to consider a deponent's responses to a series of questions as material facts (as the Court suspects was their intent here), they could have easily done so by listing the relevant responses as proposed facts or by summarizing the relevant exchange into a proposed fact, as is the standard practice. Unfortunately, that was not the case. Those proposed "facts" that track the example given above will be disregarded as immaterial.

[4] The Court notes that the Ponce School of Medicine also appears in the underlying documents with other names, such as the "Ponce Health Sciences School of Medicine," "Ponce Health Sciences University," and "Ponce School of

23; **ECF No. 81-10** at 2. On April 17, 2012, HESL and the Ponce School of Medicine executed an affiliation agreement ("2012 Affiliation Agreement"), whereby they "agreed to form an Educational Consortium to assist and support each other in providing educational experiences and teaching sites for medical students and physicians in training also known as medical residents." **ECF No. 81** at ¶ 24; **ECF No. 81-11** at 1, § 1. The 2012 Affiliation Agreement had no concrete expiration term and could only be modified by a subsequent written agreement between the parties. **ECF No. 81-11** at 2, § 5; *id.*, at 5, § 14.

In May of 2020, HESL and the Ponce School of Medicine executed another affiliation agreement titled "Clinical Training Affiliation Agreement" ("2020 Affiliation Agreement"). **ECF No. 81** at ¶ 25; **ECF No. 81-12** at 1; *see also* **ECF No. 91** at ¶ 7. Like the 2012 Affiliation Agreement, this one also created an Educational Consortium to help "provide educational experiences and teaching sites for medical students and physicians in training also known as medical residents." **ECF No. 81** at ¶ 26. The 2020 Affiliation Agreement recognized that "the hospital, the medical school and participating physicians with academic appointments in the [Ponce School of Medicine] will receive the benefits of medical malpractice caps in all medical malpractice cases that arise under the terms of the Law 136, as amended." **ECF No. 81-12** at 2, § 3.A.

Dr. Burgos and HESL executed a Medical Teaching Contract on July 1, 2020 for him to provide teaching services as a core faculty member in HESL's Gynecology and Obstetrics

---

Medicine and Health Sciences." For simplicity's sake, and because there is no indication from the parties that this variation is meant to refer to different entities, the Court will use "Ponce School of Medicine" to refer to the medical school affiliated with HESL.

Residency Program, through the educational consortium formed with the Ponce School of Medicine. **ECF No. 81-3** at 1; **ECF No. 109-2** at 1 (cert. trans.); *see also* **ECF No. 91** at ¶ 13. SOCG did not appear as a party to that contract. *Id.*, at ¶ 14. This Medical Teaching Contract was in effect from July 1, 2020 to June 30, 2021. **ECF No. 81** at ¶ 8; **ECF No. 81-3** at 2 and **ECF No. 109-2** at 2 (cert. trans.).

Dr. Burgos and the Ponce School of Medicine executed a Contracted Services Agreement dated November 17, 2020, which by its terms, was in effect from July 1, 2020 to June 30, 2021. **ECF No. 81** at ¶ 13; **ECF No. 81-5** at 5; *see also* **ECF No. 91** at ¶ 22. Pursuant to the agreement, Dr. Burgos was contracted as a faculty instructor to provide the following services: "08-Gyn Department, Provide clinical opportunities for medical students to develop basic obstetrical and gynecology skills, both outpatient and inpatient activities. (San Lucas Hospital/Private Office) Provide lecture to 3rd year medical students." **ECF No. 81** at ¶ 14; **ECF No. 81-5** at 5.

During the time period between December 18 and 20, 2020, Dr. Lyanne Colón-Santos ("Dr. Colón") and Dr. Felix Chico-García ("Dr. Chico") were resident physicians receiving training in HESL's Residency Program in Obstetrics and Gynecology. **ECF No. 81** at ¶ 15. Both had executed contracts with the Puerto Rico Department of Health to render services as Resident Physicians in HESL's Obstetrics and Gynecology program. *Id.*, at ¶ 16; **ECF No. 81-8** and **ECF No. 109-3** (cert. trans.); **ECF No. 81-9** and **ECF No. 109-4** (cert. trans.).

SOCG is a domestic, for-profit, professional services corporation incorporated effective July 19, 2011. **ECF No. 91** at ¶ 1. Its purpose, as it appears in the Puerto Rico Department of

State's Online Corporation Registry, is "[t]o provide professional services related to the practice of medicine, particularly the specialty of Obstetrics and Gynecology, including related ancillary services." *Id.*, at ¶ 2; *see also* **ECF No. 110-3** (translated copy of SOCG's *Certificate of Incorporation of a Professional Corporation* filed with the Puerto Rico Department of State on July 19, 2011, which includes the same language). Dr. Burgos is SOCG's incorporator, resident agent, president, and treasurer, and is also the person in charge of its organization and administration of wealth. **ECF No. 91** at ¶¶ 3-5.

On May 7, 2020, Ms. Seda became a patient of Dr. Burgos and SOCG. *Id.*, at ¶ 27. She went to around ten to eleven prenatal visits at Dr. Burgos' office. *Id.*, at ¶ 28. Dr. Burgos was the doctor who attended her during those visits. *Id.*, at ¶ 29. On December 11, 2020, Ms. Seda went to SOCG for a prenatal visit and was told that she was due to give birth on December 15, 2020. **ECF No. 35** at 4, ¶¶ 29-30; **ECF No. 91** at ¶ 32. Ms. Seda was admitted to HESL's Labor and Delivery Department on December 18, 2020, for the delivery of her infant son. **ECF No. 81** at ¶ 2. Dr. Burgos provided treatment and care to Ms. Seda from December 18 through December 20, 2020 at HESL, as he was the Obstetrician in charge of the delivery. *Id.*, at ¶ 5. In addition to Dr. Burgos, Ms. Seda was treated from December 18, 2020 through December 20, 2020 by Dr. Colón and Dr. Chico. *Id.*, at ¶ 16. The Physician's Delivery Note from HESL's medical records on Ms. Seda indicates that the delivery was performed by Dr. Burgos, Dr. Chico, and Dr. Colón. *Id.*, at ¶ 18. Nurse Keila Torres, an obstetrical nurse, provided nursing care to Ms. Seda at HESL's Labor and Delivery Ward on December 19 and 20, 2020, assisting Dr. Burgos and the resident physicians.

**ECF No. 118-1** at ¶ 10-12. She carried out medical orders entered by the doctors during the delivery. **ECF No. 155-1** at 9, ¶ 13. The nurses at HESL's labor and delivery ward are employed by HESL. **ECF No. 41** at 3, ¶¶ 11, 12.

On December 20, 2020, Ms. Seda gave birth to I.M.S. at HESL. **ECF No. 91** at ¶ 34.

**V.     Discussion**

   **A. HESL's motion for partial summary judgment on the applicability of the RAMC Act liability caps to Dr. Burgos.**

HESL's motion for partial summary judgment seeks a declaration that the RAMC Act's liability caps apply to plaintiffs' claims. It is undisputed that HESL is or is part of a Regional Academic Medical Center ("RAMC"), and HESL argues that Dr. Burgos provided treatment to Ms. Seda at HESL as a core faculty member of its Obstetrics and Gynecology residency program, which is affiliated with the Ponce School of Medicine. During Ms. Seda's medical procedure, she was attended to by Dr. Burgos and residents Dr. Colón and Dr. Chico, who were under his supervision. Accordingly, HESL argues, the liability caps apply to plaintiffs' negligence claims because it and Dr. Burgos were engaged in the exercise of "academic and teaching duties" at the time the alleged tort occurred.

Plaintiffs, on the other hand, argue that HESL failed to establish that each and every one of Dr. Burgos' allegedly negligent actions were taken in exercise of his teaching duties. They also extend this line of reasoning to every allegedly negligent action of the nurses who attended Ms. Seda and to HESL itself. Separately, and as they do in their own motion for partial summary judgment, plaintiffs argue that HESL failed to establish that Ms. Seda consented to being treated

within its "teaching stream." Accordingly, plaintiffs contend that HESL and Dr. Burgos'

negligent actions fall outside the scope of the RAMC Act's liability caps.

To recap, the parties seek for the Court to decide whether the RAMC Act's liability caps

apply to plaintiffs' claims. However, the Court is not being asked to (and does not here decide)

the antecedent question of whether there was any negligence at all that could give rise to

liability. In other words, the Court's analysis below proceeds on the **assumption** that there is

liability, but that matter will be decided at a further point in these proceedings.

### 1.  Statutory interpretation under Puerto Rico law.

Because this Court is "sitting in diversity[, it applies] state substantive law and federal

procedural law." *Suero-Algarín v. CMT Hospital Hima San Pablo Caguas*, 957 F.3d 30, 39 (1st Cir.

2020) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415 (1996); *Erie R.R. Co. v. Tompkins*,

304 U.S. 64, 58 (1938)). In diversity cases, the Court ". . . look[s] to the pronouncements of a

state's highest court in order to discern the contours of that state's law." *Hosp. San Antonio, Inc.*

*v. Oquendo-Lorenzo*, 47 F.4th 1, 7 (1st Cir. 2022) (quoting *González Figueroa v. J.C. Penney Puerto*

*Rico, Inc.*, 568 F.3d 313, 318 (1st Cir. 2009)). Puerto Rico is treated as a state for diversity purposes.

*Quality Cleaning Products R.C., Inc. v. SCA Tissue North America, LLC*, 794 F.3d 200, 204 (1st Cir.

2015). Thus, "Puerto Rico law supplies the substantive rules of decision." *Rodríguez v. Encompass*

*Health*, 126 F.4th at 779. The goal of the Court's inquiry is to ascertain what rule Puerto Rico

courts would most likely apply. *See Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1151 (1st Cir.

1996); *Quality Cleaning Products R.C., Inc. v. SCA Tissue N.A., LLC*, 794 F.3d at 206.

Accordingly, when interpreting a statute under Puerto Rico law, the Court "begins with the text of the underlying statute, and ends there as well if the text is unambiguous." *In re Plaza Resort at Palmas, Inc.*, 741 F.3d 269, 274 (1st Cir. 2014); *see also* art. 14, Puerto Rico Civil Code of 1930, P.R. Laws Ann. t. 31, § 14 (repealed) ("When a law is clear and free from all ambiguity, the letter of the same shall not be disregarded, under the pretext of fulfilling the spirit thereof."). If the text is ambiguous, then the Court must consider "the reason and spirit thereof, or the cause or motives which induced its enactment." Art. 19, Puerto Rico Civil Code of 1930, P.R. Laws Ann. t. 31, § 19 (repealed).[5]

### 2. Interpretation and extension of the RAMC Act's liability caps.

The RAMC Act was enacted into law on July 27, 2006 and established the eponymous RAMCs, which it defines as "[a] group of one (1) or more hospitals, health facilities, medical groups and health professionals education and training programs related to an accredited School of Medicine whose mission is to educate, conduct research and provide health services." P.R. Laws Ann. t. 24, § 10031(b). Among the powers and functions granted to the RAMCs is the power to "[n]egotiate and execute contracts with health institutions that meet the minimum

---

[5] The current version of the Puerto Rico Civil Code, Act No. 55 of June 1, 2020, codified as 31 L.P.R.A. § 5311 *et seq.* and applicable to the facts of the case, entered into force on November 28, 2020, repealing the previous 1930 Civil Code. *See Rivera-Rosario v. LSREF2 Island Holdings, Ltd., Inc.*, 79 F.4th 1, 5 n.1 (1st Cir. 2023). However, the current version of the Civil Code has yet to be officially translated into English, which is why the Court will cite to the annotated Spanish-language compilation, "*Leyes de Puerto Rico Anotadas*" ("L.P.R.A.") and not the English-language compilation, "Puerto Rico Laws Annotated" ("P.R. Laws Ann."). Moreover, and notwithstanding the lack of translation, articles 19 and 20 of the 2020 Code (31 L.P.R.A §§ 5341-42) contain the same substantive rules of interpretation as articles 14 and 19 of the 1930 Code, for which reason the Court finds it appropriate to cite and rely on their translated text.

requirements for belonging to a Regional Academic Medical Center through Affiliation Agreements. These include hospitals and other medical facilities as for example outpatient clinics, private medical offices, treatment centers and others." P.R. Laws Ann. t. 24, § 10034(c).

Section 7 of the RAMC Act extends "the limitations imposed in Act No. 104 of June 29, 1955, as amended [P.R. Laws Ann. t. 32, § 3077], to the Regional Academic Medical Centers and the faculty members thereof for the medical procedures performed at said Centers in the exercise of their academic and teaching duties." P.R. Laws Ann. t. 24, § 10035. "Said limitation establishes a maximum of $75,000 for damages suffered by a person and up to $150,000 when the damages were suffered by more than one person or when there are several causes of action to which a single injured party is entitled." *Id.* It further affords "governmental immunity . . . to students and physicians enrolled in the internship, residency, and fellowship programs of public and private medical-hospital institutions, so that they are not brought before the courts or any forum of competent jurisdiction." *Id.* This immunity extends to "all medical residents rendering services in public and private medical-hospital facilities under contract entered into with the Department of Health of Puerto Rico, the University of Puerto Rico, or a Graduate Medical Education Program accredited by the Accreditation Council of Medical Education (ACGME)." *Id.*[6]

---

[6] This "immunity provision" was only recently included as an amendment to section 7 by Act No. 94-2023, approved and effective as of August 8, 2023. According to its Statement of Motives, the amendment sought to clarify the legislature's intent to explicitly extend governmental immunity—not merely a liability cap—to students, medical residents, and physicians in post-graduate training in medical malpractice cases. This amendment seems to be a

When it comes to the RAMC Act, the Court does not write on a blank slate. In fact, this Court had a very similar controversy before it in the not-too-distant past concerning the application of its liability caps. In *Ortiz-Santiago v. Hosp. Episcopal San Lucas, Inc.*, where HESL also figured as defendant, the Court issued an Opinion and Order denying a motion for partial summary judgment seeking virtually the same relief that is sought here. *See Ortiz-Santiago v. Hosp. Episcopal San Lucas, Inc.*, Civ. No. 16-1099 (ADC), 2018 WL 11417580 (D.P.R. June 26, 2018) ("*Ortiz-Santiago I*"). As relevant, the Court inquired into "whether the challenged treatments fell within the exercise of 'teaching duties.'" *Id.*, at *2. It found that "the evidence [HESL] submitted in support of its motion . . . does not establish [that] all of the patient's treatments . . . fell within the ambit of teaching." *Id.*, at *3. It further found that HESL's "evidence fails to establish that the specific treatments and medical decisions challenged by the plaintiffs were administered in accordance with [HESL's] teaching program." *Id.* After denying HESL's motion, the Court held an evidentiary hearing to answer these open questions, which resulted in a second Opinion and Order where it found that two of the three physicians (and HESL) were covered by the RAMC Act liability caps. *Ortiz-Santiago v. Hospital Episcopal San Lucas, Inc.*, Civ. No. 16-1099 (ADC), 2018 WL 4007086 (D.P.R. Aug. 20, 2018) ("*Ortiz-Santiago II*").

---

response to *Rodríguez Figueroa v. Centro de Salud M*, 197 P.R. Dec. 876, 97 P.R. Offic. Trans. 48 (2017), where the Puerto Rico Supreme Court held that the previous version of section 7 did not afford immunity to medical students, but rather a liability cap: "[A]t the RAMCs, students, and faculty members, in cases involving medico-hospital malpractice, do not have 'immunity,' but rather a monetary cap on the amounts that may be ordered to compensate." The liability cap, however, still applies to the RAMC and its medical faculty.

The need to establish that the medical procedures were undertaken in the exercise of teaching duties was explained in *Rodríguez-Cedeño v. Sur Med Medical Center*, 977 F. Supp. 2d 115 (D.P.R. 2013). There, the Hon. Judge Gustavo A. Gelpí held that because the RAMC Act did not define "teaching duties," the statute was ambiguous. *Id.*, at 118. As a result, the court interpreted the motives behind the RAMC Act's 2011 amendments that replaced a more general "duties and function" language with the more specific phrase "teaching duties" that it has now. *Id.*, at 117-18. By doing so, Judge Gelpí interpreted the amendment to reject "the automatic application of the liability cap to the Regional Academic Medical Center as a whole," and concluded that "[t]his legislative action demonstrates a deliberate intent to narrow the applicability of the cap from the general 'duties and functions' of a physician to a physician acting in his teaching capacity." *Id.* at 118.

In addition, as a result of *Ortiz-Santiago II*, this Court certified two questions to the Puerto Rico Supreme Court ("PRSC") involving the application of the RAMC Act liability caps. The PRSC issued an Opinion where it held that the RAMC Act's liability caps apply globally to all claims brought against covered institutions and medical professionals. *Ortiz Santiago v. Hosp. Episcopal San Lucas, Inc.*, 205 P.R. Dec. 222 (2020) ("*Ortiz-Santiago III*"); *see* **ECF No. 81-13** (cert. trans.). Relying on *García v. E.L.A.*, 146 P.R. Dec. 725 (1998), however, it implied in *dicta* that a judgment creditor against a covered RAMC could nonetheless recover the remaining excess amount of the judgment against a non-covered co-tortfeasor. 205 P.R. Dec. at 235; **ECF No. 81-13** at 13-14.

Finally, and most recently, the First Circuit issued a relevant opinion in *Pérez-Pérez v. Hospital San Lucas, Inc.*, 113 F.4th 1 (1st Cir. 2024).[7] There, it held that whether a doctor was a member of HESL's faculty at the relevant time was a factual dispute that, if not uncontroverted, should be for the jury to decide. *Id.*, at 6. It buttressed its conclusion with the following:

> In theory, whether one is a faculty member performing a teaching duty within the meaning of Law 136 is a mixed question of fact and law. Factually, what is the agreed-upon relationship with the hospital, **and what was the person doing on the relevant occasion**? Legally, is that relationship that of a "faculty member" within the meaning of the statute, **and is certain conduct "teaching"**?

*Id.*, at 7 (emphasis added). Evidently, the First Circuit read the RAMC Act as requiring a defendant to establish that the conduct at issue falls within his or her teaching duties, in accord with *Ortiz-Santiago I* and *Rodríguez-Cedeño*. It then held that unless the evidence "is so one-sided that there is no room for reasonable dispute," the matter should be submitted to a jury for determination. *Id.*

In sum, the prevailing judicial interpretations of the RAMC Act provide that the statute requires, on summary judgment, that a defendant seeking to apply its liability caps establish that no genuine issue of fact exists as to whether the alleged damages occurred while in the exercise of teaching duties. Further, the PRSC has held that liability caps apply to all covered entities and individuals globally, so that a plaintiff's recovery is capped at the statutory maximum regardless of how many covered defendants may be jointly liable for damages. But,

---

[7] A case also featuring HESL as the defendant-appellee where, in addition, Ms. Seda's attorneys represented the plaintiff-appellant.

if there are non-covered defendants who share in joint liability with the covered defendants, then the plaintiff may seek to recover from these the uncapped excess damages.

> **3. Whether defendants have established that HESL and Dr. Burgos attended to Ms. Seda's delivery in the exercise of their teaching duties.**

In principle, section 7 of the RAMC Act caps any damages award issued against HESL as an entity and against its medical faculty. It also protects its medical students and residents through a grant of governmental immunity. Here, as far as the undisputed facts go, there is no question that at all relevant times, (i) HESL was a RAMC or part of a RAMC, (ii) Dr. Burgos was a core faculty member, and (iii) Dr. Colón and Dr. Chico were resident physicians in HESL's Obstetrics and Gynecology Department who assisted Dr. Burgos in treating Ms. Seda. Accordingly, there is no dispute that Dr. Chico and Dr. Colón are covered by the RAMC Act's immunity provision because they are medical residents.

But the story is different for HESL and Dr. Burgos. For the RAMC Act's liability caps to apply to them, both HESL and Dr. Burgos need to establish that Ms. Seda's delivery was a medical procedure performed in the exercise of academic and teaching duties, as opposed to a procedure undertaken in another capacity. HESL's motion for partial summary judgment turns precisely on this question.

HESL relies mainly on three pieces of evidence in support of applying the liability caps. First, HESL attached eight pages of Ms. Seda's medical record that purport to show that Dr. Burgos, Dr. Chico, and Dr. Colón all attended to Ms. Seda's procedure. **ECF No. 80** at 14. Of

these eight pages, only the "Physician's Delivery Note" dated December 20, 2020, 8:00am, directly supports this contention. It states: "Delivery Done by: Dr. Burgos; Dr. Chico (PGY-2); Dra. Col[ó]n PGY-1." **ECF No. 81-2** at 8.[8] Second, HESL presents in support a copy of its answers to plaintiffs' interrogatories and requests for production of documents. **ECF No. 80** at 3-4 (citing to **ECF No. 81-7** ("SUMF Exh. 7")). But these answers do not contain much that is of material importance to the question at hand, besides providing the names and license numbers of the residents, medical students, interns, and/or nursing staff who treated Ms. Seda. *See* **ECF No. 81-7** at 17, ¶¶ 2, 7. Third, HESL included a three-page excerpt of Dr. Burgos' deposition transcript where he is being interrogated on the contents of an unidentified document which, apparently, states that he was assisted by Dr. Chico during the delivery on December 20, 2020. **ECF No. 81-6** at 3-5. But this same exchange raises questions about the accuracy of the document in question, which, in addition, only concerns the final day of Ms. Seda's three-day labor and has no mention of Dr. Colón's role in treating Ms. Seda.

HESL did not provide any detail regarding the treatments or procedures given to Ms. Seda by Dr. Burgos or its nursing staff. It provided no information as to what Dr. Burgos' teaching or supervision of the residents entailed, how HESL's residency program works, or how

---

[8] To be clear, the other seven pages may or may not indicate that Ms. Seda was treated by all three doctors, but the Court cannot tell whether the signatures on those pages belong to Dr. Burgos, Dr. Colón, or Dr. Chico. And the signatures the Court can identify from cross-referencing the license numbers included in HESL's answers to plaintiffs' request for documents (**ECF No. 81-7** at 19, ¶ 21), belong to other resident physicians. Neither HESL nor Dr. Burgos submitted affidavits, statements under penalty of perjury, or any other reliable document of evidentiary quality identifying these signatures.

the undisputed facts demonstrate that Ms. Seda was being treated as part of HESL and Dr. Burgos' academic and teaching duties. Basically, the Court is left with the task of inferring, just from the presence of the residents during the delivery, that the procedure served as part of a teaching exercise. Even if such inference reflected the proper application of the RAMC Act, the slim evidentiary record presented to the Court simply cannot bear this weight.

In *Ortiz-Santiago I*, this Court required much more detail from HESL in order to apply the liability caps. There, HESL assumed an identical position as to the teaching duties requirement: "[T]he cap on damages applies because the Hospital is a RAMC and the patient was treated at the Hospital 'by residents and attending physicians.' . . . Accordingly, it is the Hospital's theory that this rendered all of the care the patient received during her stay within the exercise of teaching duties[.]" *Ortiz-Santiago I*, 2018 WL 11417580, at *3. The Court went on to analyze whether the physicians' respective contracts allowed for a reasonable inference that their work in the hospital was purely related to their teaching positions. It found that their terms and conditions did not allow for such inference because their teaching obligations were limited to a 20-hour per week minimum and allowed them to have their own patients and have residents participate in their procedures. *Id.* Moreover, the Court found that HESL had failed to substantiate, beyond a mere list of residents who "provided some degree of care" to the patient[,] . . . what that care entailed." *Id.* at *4. The Court thus concluded:

> Based on the foregoing, there is no reasonable basis to conclude that any of the challenged treatments provided to the patient in this case were conducted within any of the defendant physicians' capacities as faculty members of a RAMC.

> Accordingly, there remains a material question of fact upon which the applicability of the RAMC statute rests, rendering summary judgment inappropriate.

*Id.*, at 4.

After denying HESL's motion, the Court held an evidentiary hearing to answer these questions, which resulted in the second Opinion and Order where it found that two of the three physicians (and HESL) were covered by the RAMC Act's liability caps. *Ortiz-Santiago II*, 2018 WL 4007086. To reach this result, it considered evidence such as how the RAMC program operated, the structure of the residency program, the doctors' own testimonies as to what their supervision and teaching duties entailed, their testimonies as to the signatures contained in specific documents in the patient's medical record, and other case-specific details that provided much needed context. *Id.*, at *2-5.

"[A]n absence of evidence on a critical issue weighs against the party—be it the movant or the nonmovant—who would bear the burden of proof on that issue at trial." *Pérez v. Volvo Car Corp.*, 247 F.3d 303, 310 (1st Cir. 2001). Here, HESL and Dr. Burgos have failed to support that they undertook Ms. Seda's procedure as part of their "teaching duties" with evidence that approaches the level of specificity the Court required in *Ortiz-Santiago II*.[9] It relies only on Dr. Burgos' faculty status and the involvement of resident physicians in Ms. Seda's treatment.

---

[9] The Court is not inclined to take judicial notice of the findings made in *Ortiz-Santiago II* regarding HESL and its residency program, as they relate to facts that occurred between 2014 and 2015 that could now be outdated. Moreover, no party asked the Court to take judicial notice of those facts even though they cited the case liberally in their filings.

Whether the presence of residents in a medical procedure converts the same into a teaching exercise is not at all clear. Although that may ultimately be the case, the Court is not comfortable making such an inference on the record provided.[10] The Court is thus forced to hold that these facts, without more, are not enough to establish that the RAMC Act's liability caps apply to HESL and Dr. Burgos' actions in this case.

### B. Whether HESL's nursing staff is covered by the RAMC Act's liability caps.

Plaintiffs' claims include allegations of negligence attributed to HESL's nursing staff. *See*, *e.g.*, **ECF No. 33** at 11-12 ¶¶ 75, 79-82. In its opposition to HESL's motion, plaintiffs argue that nurses are not covered by the RAMC Act's liability caps because the nurses here are neither medical students, residents, nor teachers. **ECF No. 118** at 14-16.

It is undisputed that the nurses who attended to Ms. Seda were employees of HESL. **ECF No. 41** at 3, ¶¶ 11, 12. In tort law, an employer may respond directly for its own negligence and vicariously for the negligence of its employees. *See* art. 1540, Puerto Rico Civil Code of 2020, 31

---

[10] The Court notes that the evidence presented in *Ortiz-Santiago II* was sufficient to establish that the patient there had been properly admitted into the hospital's "teaching program." *Ortiz-Santiago II*, 2018 WL 4007086, at *4-6. Plaintiffs here raised Ms. Seda's purported lack of consent to be treated by resident physicians in their opposition to HESL's motion and in their own motion. *See* **ECF No. 118** at 9-10; **ECF No. 93** at 12-15. The Court has elected not to decide this issue because, even if Ms. Seda had been properly treated under HESL's "teaching program," defendants would have still needed to establish that Dr. Burgos treated her within his teaching duties. That said, under the Puerto Rico Civil Code of 2020, Ms. Seda's lack of contemporaneous objection to her life partner's signature in the treatment consent form could give rise to tacit ratification of her life partner's consent on her behalf. *See* art. 325, Puerto Rico Civil Code of 2020, Act No. 55-2020, 31 L.P.R.A. § 6268. In addition, given the evidence alluded to by HESL on reply (**ECF No. 155** at 5-7) that plaintiff had previously signed other consent to treatment forms at HESL informing her of the possibility of being treated by medical students and residents at the hospital, her lack of objection during the three days she was at the hospital could also translate into a tacit confirmation of her agreement to be treated by residents. *See* art. 350, Puerto Rico Civil Code of 2020, Act No. 55-2020, 31 L.P.R.A. § 6320. In any case, whether Ms. Seda consented or whether the consent is even required to apply the RAMC Act's liability caps are questions that remain open and that the parties should address.

L.P.R.A. § 10805 (restyling art. 1803 of the Puerto Rico Civil Code of 1930, P.R. Laws Ann. t. 31,

§ 5142 (repealed)). Here, HESL could be held vicariously liable for the negligent actions of its

employees, which may include the nursing staff that attended to Ms. Seda's procedure. But, if

Ms. Seda was treated within HESL's residency program, then the actions of its nursing staff

would arguably fall under the purview of HESL's teaching duties, making the RAMC Act's

liability caps applicable. Therefore, the question of whether Ms. Seda received treatment as part

of HESL's teaching program encompasses plaintiffs' allegations of negligence directed at HESL

and its nurses. *See* **ECF No. 118** at 14-18.

That said, the Court notes that the RAMC Act's liability caps does not facially extend to

nursing faculty or nursing students. The covered entities include only the RAMC itself and the

medical faculty thereof, and no mention of "nurses" or "nursing staff" are included in the text

of the statute.[11] However, holding that the liability caps do not protect the RAMC for the

negligent actions of its nursing staff would run counter to its purposes. Throughout the RAMC

Act's Statement of Motives, "health professionals" appear as the category of individuals the

Puerto Rico Legislature explicitly sought to help, and it repeatedly includes nurses within that

category:

> After the implementation of the Health Reform, by virtue of Act No. 72 of
> September 7, 1993, the educational workshops for health professionals, especially
> those for medical education, were neglected, **as were those for the nursing
> profession and for other health professionals**. The situation must be corrected

---

[11] Because plaintiffs allege that HESL, as an employer, is vicariously liable for the actions of its nurses, it is
unnecessary to determine whether nursing students or nursing staff engaging in teaching and academic duties fall
under the provisions of the RAMC Act.

taking into consideration the reality under which **all health professionals** of the Island presently live regarding their education.

As a consequence of not having given proper attention to those places that served as learning workshops for students **of the various health professions, especially medicine and nursing students**, to mention the two groups most affected by this problem…

. . .

In order to develop and strengthen educational programs **for health professionals…** the Regional Medical Centers of Puerto Rico are hereby created through this Bill. . . .

. . .

All the major cities of the United States of America have at least one Academic Medical Center and there is at least one in every State of the American nation. This provides a guaranteed medical education and the accreditation of training programs for physicians, **nurses** and many other health professionals.

. . .

The goal of this effort is to return to the public health system the educational and service[-]oriented excellence it had in the past and thus contribute positively to improving the health of the Puerto Rican people.

Act No. 136-2006, Statement of Motives, **ECF No. 81-15** at 1-6 (emphasis added).

Moreover, a RAMC is not an empty vessel. The law defines a RAMC as "[a] group of one or more hospitals, health facilities, medical groups and health professionals education and training programs related to an accredited School of Medicine whose mission is to educate, conduct research and provide health services." P.R. Laws Ann. t. 24, § 10031(b). While providing services to patients under a qualifying residency program, a qualifying institution acts as a RAMC—and a hospital needs nurses. The participation of nurses in medical procedures,

academic or not, is essential to the provision of the residency programs that the RAMC Act sought to foster and create. Therefore, if a nurse is employed by a RAMC, and he or she assists in a medical procedure performed by or under the supervision of a faculty member within a residency program, the Court sees no compelling reason why the liability caps should not protect the RAMC in the case that it is found vicariously liable for a nurse's negligence.

Therefore, if negligence were to attach to HESL's nurses in this case, HESL would be able to avail itself of the RAMC Act's liability caps as long as Ms. Seda was treated as part of its teaching and academic duties. But because that fact is not uncontested, the Court cannot go any further on this question at this point.

***

For the reasons stated above, the Court **DENIES** the motion for partial summary judgment filed by HESL at **ECF No. 80**. However, these same reasons lead the Court to withhold granting summary judgment to plaintiffs. Following the First Circuit's *Pérez-Pérez* decision, the Court cannot adjudicate the matter in favor of one side or the other on the record before it. Whether HESL and Dr. Burgos treated Ms. Seda as part of their teaching duties is a genuinely disputed material fact. Therefore, the Court also **DENIES** plaintiffs' motion for summary judgment at **ECF No. 93**.

### C. SOCG's motion for summary judgment on its liability for Dr. Burgo's actions.

SOCG's motion for summary judgment (**ECF No. 90**) seeks the dismissal of all claims against it on two alternative grounds. First, SOCG argues that Dr. Burgos was not acting on its

behalf at the time the alleged tort occurred, and therefore it cannot be liable for any of his actions or omissions as they were taken in his capacity as a HESL faculty member. **ECF No. 90** at 5-8. Second, SOCG maintains that if Dr. Burgos' conduct were somehow attributable to it, the RAMC Act's liability caps would extend to SOCG because Dr. Burgos was acting in his teaching capacity. *Id.*, 8-9.

Plaintiffs oppose SOCG's first argument by pointing to two specific causes of action in its amended complaint. **ECF No. 121** at 2-3. The first cause of action contains specific allegations of negligence that impute vicarious liability on SOCG as Dr. Burgos' employer for his negligent actions and omissions. **ECF No. 33** at ¶¶ 74-89. The second cause of action alleges that SOCG is directly liable to plaintiffs for its own negligent actions and omissions. **ECF No. 33** at ¶¶ 90-103. [12] These latter allegations comprise SOCG's alleged failure to comply with general obligations to abide by the applicable standard of care and to follow applicable regulations, policies, and procedures, as well as to properly train and supervise the medical staff that provided care to Ms. Seda. *See* **ECF No. 33** at ¶¶ 92-98.

Factually, plaintiffs maintain that Ms. Seda had a direct relationship with SOCG, who provided her with obstetrical services through Dr. Burgos. *See* **ECF No. 121** at 3. Although SOCG denies that "Ms. Seda retained [it] to provide obstetrical services in connection with her pregnancy," it admitted that she was a patient of both Dr. Burgos and SOCG. *See* **ECF No. 91** at

---

[12] Plaintiff also alleged that Dr. Burgos is personally liable for SOCG's own negligence. **ECF No. 33** at ¶¶ 104-108.

¶ 27; **ECF No. 122** at ¶ 9; **ECF No. 139** at ¶ 5. And so, the Court draws the reasonable inference in favor of plaintiffs as non-movants.

In turn, it is undisputed that the relationship between SOCG and Dr. Burgos is that of a professional services corporation and its official. **ECF No. 91** at ¶ 4. Under Puerto Rico's general corporations law, a professional services corporation can only provide professional services through licensed individuals. *See* P.R. Laws Ann. t. 14, § 3925.[13] The corporation, moreover, is liable for the negligent acts or conduct incurred by officials, employees, agents, or shareholders while providing professional services on the corporation's behalf. *Id.*, at § 3926. In this case, the reasonable inference would be that Dr. Burgos provided obstetrical services to Ms. Seda on behalf of SOCG.

This is, essentially, the theory of liability under which plaintiffs seek to hold SOCG liable for Dr. Burgos' alleged negligence. But whether or not the services provided by SOCG to Ms. Seda extended to the delivery procedure undertaken at HESL is not clear from the summary judgment record. There is no evidence of a contract, oral or written, detailing the scope of services to be provided. Because the tortious conduct allegedly took place after Ms. Seda was admitted and while hospitalized at HESL, whether she was treated as a patient of the RAMC or of Dr. Burgos in his private capacity is of paramount importance for SOCG's possible liability.

---

[13] Professional services are defined as "any type of personal service to the public which by law, regulation or jurisprudence could not be effected by a corporation before the effective date of this act and for which the obtaining of a license or other legal authorization for the rendering of such services is required as a condition precedent." P.R. Laws Ann. t. 14, § 3922(a). The statute further includes "doctors of medicine" as an example of a provider of such services. *Id.*

If the former is true, then SOCG would be removed from the chain of causation, as it would have not been involved in the delivery procedure.[14]

Like Schrödinger's Cat, Dr. Burgos' dual capacity as both medical faculty and private physician must collapse into one or the other if any meaningful conclusion is to be reached as to the RAMC Act's application. The Court sees no other way to resolve SOCG's possible liability for Dr. Burgos' actions: he must have attended to Ms. Seda either as a member of HESL medical faculty or as an independent contractor with admitting privileges at HESL, but he could not have done both. If HESL and Dr. Burgos were exercising teaching duties when Ms. Seda was treated, Dr. Burgos then could not have been acting on behalf of SOCG when the alleged tort occurred. SOCG would not be liable for his allegedly negligent conduct. But because that fact is not uncontested, SOCG's motion for summary judgment is hereby **DENIED**.

**VI.    Conclusion**

For the reasons explained above, the Court **DENIES** HESL's motion for partial summary judgment at **ECF No. 80**, SOCG's motion for summary judgment at **ECF No. 90**, and plaintiffs' motion for partial summary judgment at **ECF No. 93**.

In ruling in this manner, the Court recognizes that leaving open the question of whether defendants' possible liability is subject to the RAMC Act constitutes an obstacle to settlement negotiations. In addition, it is likewise evident for the Court that a resolution of this question

---

[14] The parties do not argue in their motions how defendants' respective liabilities would be apportioned under prevailing Puerto Rico medical malpractice case law. The Court limits itself to note that there are several factors to be considered in determining whether defendants are jointly liable for the alleged negligent actions of Dr. Burgos.

may advance procedures at trial, saving all parties time and resources. But deciding this matter on summary judgment is only possible if defendants present convincing evidence that (i) Ms. Seda was treated within HESL's residency program, and (ii) that Dr. Burgos was in the exercise of his teaching duties when he treated her. Therefore, pursuant to Fed. R. Civ. P. 56(e)(1) and (4), the Court will afford defendants an opportunity to address these matters through a second motion for partial summary judgment. This motion will be strictly limited to presenting facts and legal argument sufficient to establish the two issues outlined above. Defendants shall have **30 days** from the issuance of this Opinion and Order to file the motion. Plaintiffs will of course be afforded the opportunity to respond and present evidence as allowed by the Rules.[15]

**SO ORDERED**.

At San Juan, Puerto Rico, on this 26th day of March, 2025.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**

---

[15] The parties are further reminded of their obligation to submit English-language translations of all statutes, rules, and judicial decision they wish the Court to consider. L. Civ. R. 5(c); *Kenyon v. Cedeno-Rivera*, 47 F.4th 12, 19 (1st Cir. 2022) (citing *Puerto Ricans for Puerto Rico Party v. Dalmau*, 544 F.3d 58, 67 (1st Cir. 2008) for the rule that "the parties have an obligation to provide certified translations of any Spanish-language documents on which they rely").